UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SOLARIS LABORATORIES NY, LLC,

*Plaintiff,*

-against-

2BS INC. d/b/a BEACH HOUSE,

*Defendant.*

Civil Action No.  1:25-cv-6536

**COMPLAINT**

Plaintiff, SOLARIS LABORATORIES NY, LLC ("Plaintiff"), by and through its attorneys, Cullen and Dykman LLP, complaining of Defendant, 2BS INC. d/b/a BEACH HOUSE ("Defendant"), sets forth and alleges the following upon information and belief:

## PRELIMINARY STATEMENT

1.      Plaintiff brings this action against Defendant for, *inter alia*, (a) damages incurred as a result of Defendant's breach of a Master Services Agreement executed on or about April 1, 2025 (the "Agreement") between Plaintiff and Defendant; (b) to enforce Plaintiff's contractual rights under the Agreement; (c) to hold Defendant liable for damages to Plaintiff's reputation in its industry resulting from Defendant's actions, inactions, and material breaches to the Agreement.

2.      As a result of Defendants' aforementioned breaches, actions, and inactions and refusal to abide by its obligations under the terms of the Agreement, Plaintiff has sustained and will continue to sustain significant damages.

## THE PARTIES

3.      At all times hereinafter mentioned, Plaintiff was and still is a domestic limited liability company, duly formed and existing under the laws of the State of New York with a principal office and place of business at 1951 Park Avenue, New York, New York 10037.

1

4.      Upon information and belief, at all times hereinafter mentioned, Defendant was and still is a foreign corporation, duly formed and existing under the laws of the State of California with a principal office and place of business at 27917 Caraway Lane, Santa Clarita, California 91350.

## JURISDICTION AND VENUE

5.      Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332(a)(diversity) because the amount in controversy exceeds $75,000.00, exclusive of interests and costs, and there is complete diversity of citizenship between the parties.

6.      This Court may exercise personal jurisdiction over Defendant as Defendant regularly transacts and solicits business (specifically with Plaintiff) in and has substantial contacts with the State of New York and the causes of action asserted herein arise out of that business. The Agreement at issue was executed in New York, and performance was contemplated to take place in New York. Defendant purposefully availed itself of the privilege of conducting business in this State, thereby subjecting itself to jurisdiction in New York. Additionally, on its website under "Contact Us", Defendant lists a phone number and email address under the heading "New York". *Contact Us*, BEACH HOUSE, https://www.beachhousepr.com/contact, (last visited July 24, 2025).

7.      Venue is proper in this district pursuant 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTS COMMON TO ALL CAUSES OF ACTION

8.      Plaintiff was founded by Iliana Ivanova with the mission of developing innovative, science-backed products that deliver measurable results in skincare and health.

9.      Defendant is a public relations company that provides branding, media relations, and marketing services. According to its website, Defendant claims to "specialize in one thing and

one thing only: building beauty and wellness lifestyle brands." *About Us*, BEACH HOUSE, https://www.beachhousepr.com/theagency, (last visited July 24, 2025).

10.      On or about April 1, 2025, Plaintiff and Defendant executed the Agreement, a written Master Services Agreement, pursuant to which Defendant agreed to provide strategic public relations services, including brand promotion, media outreach, and related deliverables, intended to increase Plaintiff's visibility and market presence.

11.      A copy of the Agreement is attached hereto as **Exhibit "A."**

12.      Section 1 of the Agreement provides that Defendant shall perform the services described in the accompanying Statement of Work ("SOW"), which was executed by the parties and is expressly incorporated into the Agreement. The SOW outlines the scope of services to include, among other things, media strategy development, influencer outreach, and campaign execution, tailored to support and promote Plaintiff's brand and product line.

13.      A copy of the SOW is attached hereto as **Exhibit "B."**

14.      In reliance on Defendant's representations regarding the quality and scope of its services, Plaintiff paid Defendant $30,000.00 in advance for the first three (3) months of services— April, May, and June 2025.

**<u>Defendant's Fraudulent Inducement</u>**

15.       As a material inducement to enter into the Agreement, Defendant made a series of misrepresentations intended to mislead Plaintiff.

16.      In its 2024 Capabilities PDF, Defendant represented that it would provide "tailored strategies," "unique campaigns," and "programming aligned with [Plaintiff's] unique goals." Defendant further represented that it offered "transparent, measurable success" and highlighted its access to celebrity partners such as Rihanna, Queen Latifah, and Kylie Jenner.

3

17.     A copy of the 2024 Capabilities PDF is attached hereto as **Exhibit "C."**

18.     These representations were made with the intent to induce Plaintiff to enter into the Agreement and to make substantial payments to Defendant thereunder. Plaintiff justifiably and reasonably relied on these representations in doing so.

19.     Shortly after the Agreement was executed, it became evident to Plaintiff that Defendant's representations were false, misleading, and made without the intent or ability to perform its obligations.

20.     Defendant's fraud in the inducement was extensive, part of a grand scheme, and permeates every aspect of the Agreement.

### Defendant's Performance Failures and Contract Breaches

21.     Over the course of eight (8) weekly recap emails sent during the term of the Agreement, Defendant's work product demonstrated a consistent misalignment with Plaintiff's strategic goals. Specifically, Defendant focused primarily on promoting facial tools, despite Plaintiff's emphasis on core hair growth and wellness products.

22.     Defendant's outreach strategies were generic, inconsistent, and irrelevant, and failed to provide meaningful or brand-specific results. The updates lacked strategy, insight, and measurable benchmarks.

23.     Defendant failed to provide verifiable documentation of media or influencer outreach. There were no confirmations, no tracking metrics, and no transparency around campaign execution.

24.     Defendant further misrepresented Plaintiff's founder in media material by referring to her as a "skincare expert" and attributing to her fabricated health claims. These unauthorized statements pose a significant risk to Plaintiff's brand credibility and public trust.

25.     Upon confronting Defendant about falsely describing Plaintiff's founder as a "skincare expert," Defendant retroactively fabricated documents featuring altered media pitches to conceal their misrepresentations. Defendant quietly revised the wording of the pitches without acknowledging any wrongdoing and falsely asserted the corrected version had already been distributed.

26.     In addition, despite prior warnings regarding potential intellectual property conflicts, Defendant delivered influencer lists to Plaintiff that included the founder of two (2) competing brands, along with individuals who had no relevant connection to skin technology or hair growth.

27.     Defendant also failed to maintain consistent and transparent communication programs with two (2) senior appointed members of Defendant's team, in violation of the Agreement and the expectations established in the parties' pre-contract communications.

28.     Despite Defendant's utter failure to satisfy its obligations under the Agreement, it still insists on being paid in full.

## Termination and Damages

29.     Due to the serious misalignments between Defendant's performance and Plaintiff's business goals as contemplated in the Agreement and SOW, Plaintiff sought to terminate the Agreement.

30.     In response, Defendant demanded a $50,000.00 "penalty" for early termination— an amount not expressly provided for in the Agreement. Plaintiff believes this demand was intended to coerce continued payment despite Defendant's multiple material breaches and poor performance.

31.     After seeking legal counsel, Plaintiff issued a formal Notice to Cure on June 25,

2025 identifying Defendant's material breaches and invoking Section 11 of the Agreement, affording Defendant fifteen (15) days to cure.

32.     A copy of the Notice to Cure is attached hereto as **Exhibit "D."**

33.     Defendant failed to remedy the breaches.

34.     Accordingly, Plaintiff issued a Termination Letter on July 14, 2025, terminating the Agreement for cause, in accordance with Section 11.

35.     A copy of the Termination Letter is attached hereto as **Exhibit "E."**

36.     Upon receiving the Notice to Cure and/or Termination Letter, Defendant futilely attempted to correct improper work product, reschedule missed meetings, and otherwise retroactively satisfy its failed obligations under the Agreement.

37.     However, Defendant's material breaches of the Agreement are incurable.

38.     These breaches, individually and collectively, deprived Plaintiff of the benefit of the bargain and caused substantial damage, including lost opportunities, impaired goodwill, damage to Plaintiff's reputation, and a waste of financial resources committed in reliance on Defendant's misrepresentations.

## AS AND FOR A FIRST CAUSE OF ACTION
### <u>(BREACH OF CONTRACT)</u>

39.     Plaintiff repeats and realleges each of the allegations above as if fully set forth herein.

40.     The parties, for valuable consideration, entered into a valid and enforceable contract by executing the Agreement.

41.     Defendant materially breached the Agreement as described above by, among other things, misrepresenting the qualifications and experience of Plaintiff's founder in marketing materials and promotional content, failing to deliver tailored and strategic campaign services,

providing generic and non-customized marketing deliverables, failing to maintain communications with senior-level members of Defendant's team, and delivering influencer lists that included individuals affiliated with competitors as well as irrelevant influencers, thereby violating the expectations and purposes of the Agreement.

42.    Defendant's material breach of the Agreement has substantially damaged Plaintiff.

## AS AND FOR A SECOND CAUSE OF ACTION
## (BREACH OF THE IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING)

43.    Plaintiff repeats and realleges each of the allegations above as if fully set forth herein.

44.    In every contract, including the Agreement between Plaintiff and Defendant, there exists an implied covenant of good faith and fair dealing, requiring that neither party do anything to deprive the other of the benefits of the contract.

45.    Defendant willfully entered into a contractual relationship with Plaintiff and, consequently, owed Plaintiff a duty to act in good faith and fairly deal with Plaintiff.

46.    Defendant has consistently acted in bad faith and without intention of fulfilling its obligations under the Agreement.

47.    Specifically, Defendant acted in bad faith by, among other things, delivering generic services in place of promised customized strategies, misrepresenting its capabilities and intentions, and failing to communicate effectively or transparently.

48.    Defendant has therefore breached the implied covenant of good faith and fair dealing under the Agreement.

49.    Plaintiff has been substantially damaged by Defendant's breach.

## AS AND FOR A THIRD CAUSE OF ACTION
### (BREACH OF EXPRESS WARRANTY)

50.     Plaintiff repeats and realleges each of the allegations above as if fully set forth herein.

51.     Section A of the SOW incorporated into the Agreement expressly warrants that Defendant would "[i]dentify, vet, and create influencer lists to meet brand KPIs and marketing goals," and that "[t]here will be two [2] senior appointed members of the BH team leading communications programs, as well as 1-2 key account executives."

52.     Plaintiff reasonably relied on the express warranty provided by Defendant as a basis for entering the Agreement.

53.     Defendant breached the express warranty by, among other things, failing to properly vet influencers, including individuals affiliated with Plaintiff's competitors on proposed distribution lists, and by failing to provide the level of senior personnel and strategic oversight promised in the Agreement.

54.     These failures directly undermine the brand goals and marketing outcomes Plaintiff expected based on the express terms of the Agreement.

55.     Plaintiff has been substantially damaged by Defendant's breach.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (FRAUDULENT INDUCEMENT)

56.     Plaintiff repeats and realleges each of the allegations above as if fully set forth herein.

57.     Defendant knowingly and intentionally made false and misleading representations of material fact concerning its strategic capabilities and commitment to delivering customized public relations services aligned with Plaintiff's brand objectives.

58.    These misrepresentations were made with the intent to induce Plaintiff to enter into the Agreement.

59.    Plaintiff reasonably and justifiably relied on those misrepresentations in deciding to contract with Defendant.

60.    Defendant has no intention of performing in accordance with its promises and failed to deliver the individualized services, transparent reporting, and brand-aligned strategy it claimed to offer.

61.    Defendant's fraud was extensive, part of a grand scheme, and permeates every aspect of the Agreement.

62.    Defendant's fraudulent inducement has substantially damaged Plaintiff.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**(CONVERSION)**

63.    Plaintiff repeats and realleges each of the allegations above as if fully set forth therein.

64.    As part of the parties' contractual relationship, Plaintiff provided Defendant with proprietary materials, including influencer strategy information, product samples, and brand content, for the limited purpose of executing a targeted marketing campaign in accordance with the Agreement.

65.    Plaintiff retained ownership and control over all such materials and information.

66.    Despite due demand by Plaintiff for the return of its property, Defendant has wrongfully exercised and maintained dominion and control over Plaintiff's property.

67.    Defendant's unauthorized retention of Plaintiff's property is inconsistent with Plaintiff's ownership rights and constitutes a wrongful taking and use of Plaintiff's property.

68.    Plaintiff has been substantially damaged by Defendant's actions.

## AS AND FOR A SIXTH CAUSE OF ACTION
## (DEFAMATION)

69.     Plaintiff repeats and realleges each of the allegations above as if fully set forth therein.

70.     Upon information and belief, Defendant made false and defamatory statements about Plaintiff's founder in marketing and brand development materials. The statements described Plaintiff's founder as a "skincare expert," who had personally dealt with "acne and rosacea."

71.     The statements were made without privilege or authorization, falsely represented the qualifications and experience of Plaintiff's founder, and were made with the intent to harm, or in reckless disregard of, Plaintiff's reputation and credibility.

72.     The statements were false at the time they were made, and Defendant knew or should have known of their falsity or acted with reckless disregard for the truth.

73.     These unauthorized statements pose a significant risk to Plaintiff's brand credibility and public trust.

74.     Upon confronting Defendant about falsely describing Plaintiff's founder as a "skincare expert," Defendant retroactively fabricated documents featuring altered media pitches to conceal their misrepresentations.

75.     Defendant quietly revised the wording of the pitches without acknowledging any wrongdoing and falsely asserted the corrected version had already been distributed.

76.     Plaintiff has been substantially damaged as a direct result of Defendant's defamatory statements.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## (FRAUD)

77.     Plaintiff repeats and realleges each of the allegations above as if fully set forth

therein.

78.    Defendant committed fraud by knowingly and intentionally making materially false statements and engaging in deceptive conduct during the performance of the Agreement.

79.    Specifically, Defendant attempted to disseminate unauthorized media materials that falsely described Plaintiff's founder as a "skincare expert" and attributed fabricated health-related claims to her, including acne and rosacea.

80.    When Plaintiff contacted Defendant to address the misrepresentations, Defendant fraudulently attempted to cover up the misrepresentations by retroactively creating documents, including pitch decks, that had been materially altered from the original versions previously provided to Plaintiff and third parties.

81.    The altered documents were then presented to Plaintiff as if they had already been circulated to third parties, when in reality, they were post hoc fabrications intended to conceal Defendant's misconduct.

82.    Defendant knew these statements and actions were false, and undertook them to conceal its misrepresentations, avoid liability, and induce Plaintiff to continue performing under the Agreement and refrain from taking corrective legal action.

83.    Plaintiff has been substantially damaged as a direct result of Defendant's fraudulent conduct.

**WHEREFORE**, Plaintiff, Solaris Laboratories, Inc., demands judgment against Defendant, 2BS d/b/a Beach House, as follows:

(i)    On the First Cause of Action awarding compensatory damages in an amount to be determined at trial, but not less than $30,000.00, representing payments made under the Agreement, along with other damages directly resulting from Defendant's breach;

11

(ii)    On the Second Cause of Action awarding compensatory damages caused by Defendant's bad faith conduct and failure to perform in accordance with the Agreement's intent and purpose;

(iii)   On the Third Cause of Action awarding compensatory damages in an amount to be determined at trial, arising from Defendant's failure to provide the services and senior personnel expressly warranted in the Agreement;

(iv)    On the Fourth Cause of Action awarding rescissory and/or compensatory damages resulting from Plaintiff's reliance on Defendant's false and misleading representations, as well as punitive damages in an amount to be determined at trial;

(v)     On the Fifth Cause of Action awarding compensatory damages for Defendant's wrongful use of Plaintiff's proprietary materials, as well as punitive damages due to Defendant's willful and unauthorized conduct;

(vi)    On the Sixth Cause of Action awarding compensatory damages for harm to Plaintiff's business reputation, goodwill, and economic interests, as well as punitive damages due to Defendant's malicious and false statements;

(vii)   On the Seventh Cause of Action awarding compensatory damages for harm to Plaintiff's business reputation, as well as punitive damages due to Defendant's willful and unauthorized fraudulent conduct;

(viii)  Together with costs and disbursements, including attorneys' fees and interest; and

(ix)    For such other and further relief as the Court deems just and proper.

Dated: August 6, 2025
      Uniondale, New York

                           Yours, etc.,

                           **CULLEN AND DYKMAN LLP**

By:          _____
                           ANDREW P. NITKEWICZ, ESQ.
                           BRITTANY L. FRONING, ESQ.
                           *Attorneys for Plaintiff*
                           SOLARIS LABORATORIES NY, INC.
                           333 Earle Ovington Boulevard, 2nd Floor
                           Uniondale, NY 11553
                           (516) 357-3895
                           anitkewicz@cullenllp.com
                           bfroning@cullenllp.com